# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| MARATHON PETROLEUM COMPANY LP, et al, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Cause No. 1:15-cv-510-WTL-MJD ) |
| INDIANAPOLIS POWER & LIGHT COMPANY, | ) ) ) |
| Defendant. | ) ) |

## ENTRY ON MOTION TO AMEND COMPLAINT

This cause is before the Court on the Plaintiffs' motion seeking leave to file an amended complaint (Dkt. No. 120). The motion is fully briefed and the Court, being duly advised, **GRANTS** the motion for the reasons set forth below. **The Clerk is directed to docket the amended complaint found at Dkt. No. 120-1.**

## I. BACKGROUND

As alleged in the Plaintiffs' original complaint, this case arises out of a May 2013 incident involving a pipeline ("RIO Pipeline") previously owned by Plaintiff Marathon Petroleum Company LP and now owned by Plaintiff Hardin Street Transportation LLC. The Plaintiffs allege that a copper ground wire ("the Wire") was installed perpendicular to the RIO Pipeline in January 1967 as part of Defendant Indianapolis Power & Light Company's ("IPL") grounding system for power distribution. In April 2013, a series of electrical phase-to-ground faults occurred in high voltage alternating current power lines that run parallel to the RIO Pipeline and are operated by IPL. The Plaintiffs allege that these faults caused electrical current to be transmitted from the Wire to the RIO Pipeline, which, in turn, caused an electrical burn

breach of the RIO Pipeline, resulting in a release of diesel fuel from the RIO Pipeline onto the surrounding property.

The Plaintiffs assert that IPL was negligent in its "installation, maintenance, and operation" of the Wire in two respects: (1) "installing, operating, and maintaining the [Wire] on top of and in close proximity to the RIO Pipeline"; and (2) "failing to operate and control its electrical transmission system where electrical faults are reasonably foreseeable." They further assert that IPL's negligence caused the release of diesel fuel, which is costing the Plaintiffs millions of dollars to remediate.

The Plaintiffs seek to amend their complaint to accomplish three goals. First, they seek to add "new and revised" factual allegations that specify in greater detail the alleged negligence of the Defendant. Second, they seek to "clarify that it is making a claim for the costs associated with mitigation of the ongoing effects of alternating current ("AC") electrical interference with the RIO pipeline." Dkt. No. 121 at 2. Finally, they seek to add two new counts to assert claims for negligent trespass and nuisance.

## II. **DISCUSSION**

The Plaintiffs filed their motion to amend their complaint after the deadline set forth in the case management plan. Accordingly, rather than the very liberal standard applicable under Federal Rule of Civil Procedure 15(a)(2), the Plaintiffs were required by Federal Rule of Civil Procedure 16(b)(4) to show good cause for amendment, a standard that "primarily considers the diligence of the party seeking amendment." *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 831–32 (7th Cir. 2016) (citation omitted). When assessing whether any delay by the Plaintiffs was unreasonable, "'[t]he underlying concern is the prejudice to the defendant rather than simple passage of time.'" *Id.* (quoting *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014)).

The Court finds that the Plaintiffs have shown good cause for allowing the amendment they seek even though the deadline has passed. As an initial matter, the Court notes that the Plaintiffs technically were not required to amend their complaint simply to add new legal theories, as "[a] plaintiff is not required to plead legal theories in his complaint." *King v. Kramer*, 763 F.3d 635, 642 (7th Cir. 2014). In light of this fact, the case management plan contains a deadline by which the Plaintiffs, as the parties with the burden of proof, were required to set forth a statement of claims, including their legal theories. That deadline ultimately was extended to February 13, 2017, and the Plaintiffs complied with it. Thus, to the extent that the amended complaint adds new legal theories based upon the same event—the May 2013 release of diesel fuel—upon which the original complaint was based, the Defendant has no viable objection based on timeliness. The same is true with regard to the additional facts relating to that event that are contained in the amended complaint.

The Defendant's timeliness argument implicitly recognizes this, properly focusing on the new claims in the proposed amended complaint that relate to the Plaintiffs' allegation that they must perform mitigation work to prevent further breaches of the pipeline wall caused by AC interference from the Wire. This claim is distinct from the original claim, in that it does not relate to the May 2013 release of diesel fuel that allegedly was caused by faults, but rather relates to the potential for breaches occurring as a result of the normal use of the Wire over time. That said, however, it is factually related to the original claim, and the relevant facts relating to the two claims are so intertwined that the interests of judicial economy clearly are served by litigating the two together.

The relevant inquiry, then, is whether the Plaintiffs unreasonably delayed seeking to amend their complaint to add the mitigation claim and whether any delay—unreasonable or not—prejudiced the Defendant. The Defendant argued that the Plaintiffs "were no doubt aware

of their possible intent to assert their new claim at least as early as it served its [sic] answers to interrogatories back on May 6, 2016." Dkt. No. 126 at 3. Given that the Defendant itself describes the new claim as "highly technical in nature," *id.* at 4, the Court does not find it unreasonable that the Plaintiffs waited until they had complete information from their experts before filing their motion to amend. The Court further finds that any potential prejudice to the Defendant can be avoided by reopening expert discovery and permitting whatever additional expert reports the Defendant needs to address the new claim. If a supplemental motion for summary judgment is appropriate to address the new claims, that can be accommodated as well.

Finally, the Defendant argues that the Plaintiffs' claims for nuisance and trespass are futile as a matter of law. The Court finds that these arguments are better addressed in the context of a summary judgment motion so that the parties can more fully develop the arguments and the factual record.

**Within 14 days of the date of this Entry,** the parties shall confer and file an agreed amended case management plan that will permit the Defendant to address the new claims contained in the amended complaint. If the parties are unable to agree, they shall request a conference with Magistrate Judge Dinsmore to assist them. If the parties are able to fully brief any supplemental motion for summary judgment by October 1, 2017, the Court would anticipate being able to accommodate the existing trial date.

SO ORDERED: 4/27/17

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification